1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                    WESTERN DISTRICT OF WASHINGTON
                              AT SEATTLE
7

8   GEORGE L. SCHILLING and SHU Y.          Case No. C17-0060RSM
    SCHILLING,
9                                           ORDER DENYING DEFENDANT'S
                      Plaintiffs,           MOTION TO DISMISS
10

11                      v.

12  JPMORGAN CHASE & CO. d/b/a JP
    MORGAN CHASE BANK, N.A.;
13  TRANSUNION, LLC; EXPERIAN
    INFORMATION SOLUTIONS INC.; and
14  EQUIFAX INC.,
15

16                    Defendants.

17                 I.          INTRODUCTION

18          This matter comes before the Court on Defendant JPMorgan Chase's Motion to Dismiss

19  under Federal Rule of Civil Procedure 12(b)(6).  Dkt. #16.  Defendant seeks to dismiss Plaintiffs'

20  claims under the Federal Credit Reporting Act ("FCRA") and the Washington Consumer

21

22  Protection Act ("CPA").  Defendant argues that Plaintiffs' FCRA claim fails as a matter of law

23  because: (1) Plaintiffs cannot claim their debt was settled through a short pay off, and (2) Plaintiffs

24  failed to allege that Defendant received a notice of dispute, a prerequisite for liability under

25  FCRA.  *Id.*  Defendant also attacks Plaintiffs' CPA claim, arguing that: (1) FCRA preempts CPA

26  claims, and (2) Plaintiffs' pleadings merely parrot the elements of a state law CPA claim.  Dkt.

27  #16 at 13-18.

28

Plaintiffs respond that their claims should not be dismissed because: (1) Defendant accepted a payment to settle Plaintiffs' debt, constituting accord and satisfaction, so reporting the debt as "charged off" is inaccurate; (2) the Complaint sufficiently alleges the "notice" element of a FCRA claim; (3) their CPA claim is not preempted because the conduct giving rise to their state law claim is separate from their FCRA claim, and (4) they have adequately pled elements of a CPA claim. Dkt. #23.

For the reasons set forth below, the Court agrees with Plaintiffs and DENIES Defendant's Motion.

## II.    BACKGROUND

Prior to the financial crisis, Plaintiffs George and Shu Schilling obtained a second mortgage loan from Washington Mutual for $230,000. Dkt. #1 at ¶ 10. Defendant JPMorgan Chase acquired the loan after Washington Mutual failed in 2008.[1] *Id.* After health issues arose, Plaintiffs fell behind on their payments. Dkt. #1 at ¶ 11. In 2015, Defendant initiated negotiations by sending offers to Plaintiffs to settle the balance of the debt for less than they owed. *Id.* Specifically, on September 23, 2015, Defendant sent Plaintiffs a letter offering to "greatly reduce the remaining balance of $190,950.89 on your account, so it's easier for you to settle this account once and for all." Dkt. #1-2 at 49. Defendant's offer listed three figures:

- One-Time Payment of $26,642.63 (Payoff Date: October 27, 2015)
- Monthly Payments of $2,592.00 (Payoff Date: November 1, 2016)
- Monthly Payments of $992.00 (Payoff Date: November 1, 2018)

---

[1] Plaintiffs bring their FCRA claims against this Defendant in its capacity as a credit "furnisher." Dkt. #1 at ¶ 2. Defendant admits it is a credit "furnisher" as defined by FCRA. Dkts. #16 at 11 and #1 at ¶ 2.

Defendant's offer further stated: "Once your settlement payoff is complete, we'll release any remaining lien(s) we may hold on the property and notify the credit reporting agencies that the balance has been resolved." Dkt. #1-2 at 49. Defendant's letter explicitly states that it constituted a "valid offer that ends on October 27, 2015." *Id.*

On October 15, 2015, Plaintiffs' counsel informed Defendant of his representation and faxed Defendant a letter proposing to tender $10,000.000 in exchange for Defendant's release and conveyance of Plaintiffs' Deed of Trust. Dkts. #1 at ¶ 12 and #1-2 at 15.[2]

On October 21, 2015, Defendant sent a letter to Plaintiffs' counsel acknowledging that Plaintiffs had retained counsel. Dkt. #1-2 at 83. However, Defendant did not address the counteroffer included in Plaintiffs' October 15, 2015, letter. *Id.*

On October 26, 2015, Plaintiffs' counsel submitted a cashier's check in the amount of $10,000.00. Dkt. #1 at ¶ 12. Counsel expressly specified the payment was made "in consideration for Chase releasing the note and re-conveyance of the Deed of Trust associated with the Loan's account number XXXXX." *Id.* and #1-2 at 18. Defendant cashed the check immediately on October 28, 2015, Dkt. #1-2 at 18, and did not provide any additional notation or protest on the face of the check itself. *Id.*

The parties do not dispute that Defendant has since reported the debt as "charged off" rather than paid off by a compromised amount. Dkt. #1 at ¶ 17. Plaintiffs' Complaint cites to Experian's website for the definition of "charged off," which means "that the original creditor has given up on being repaid according to the original terms of the loan. It considers the remaining

---

[2] Specifically, the Letter states:
> "Mr. & Mrs. Schilling propose to tender ten thousand dollars ($10,000.00) by October 31, 2015 in consideration for Chase releasing the note and conveyance of the Deed of Trust associated with account number XXXX."

Dkts. #1 at ¶ 12 and #1-2 at 15 and 49.

balance to be bad debt, but that doesn't mean you no longer owe the amount that has not been repaid." Dkt. #1 at ¶ 28. Having been "charged off" by the original lender, the account is generally sent to a collection agency, which will then attempt to recover the remaining amount and potentially additional interests and fees. *Id.*

After depositing Plaintiffs' check, Defendant continued reporting the debt as "charged off," and continued to issue debt collection demands to Plaintiffs, including almost daily collection calls. Dkt. #1 at ¶ ¶ 13 and 17. Over the course of the following months, Plaintiffs sent Defendant multiple letters disputing Defendant's reporting of the debt as "charged off" rather than paid off by settlement, and requesting investigation, which went unanswered by Defendant.[3] Plaintiffs allege at least two of these written disputes were sent to Trans Union, Experian and

---

[3] Specifically, these contacts include:

- In March of 2016, pursuant to RCW 31.04.290, Plaintiffs' counsel issued to Defendant a written request seeking detailed information regarding the payment Plaintiffs made and how it applied to the Loan. *Id.* at ¶ 14.
- Plaintiffs' counsel sent another letter in April of 2016, specifically requested the re-conveyance of their deed of trust, with citations to Washington laws, and exhibits documenting payment of the compromised amount. *Id.* at ¶ 15, Dkt. #1-2 at 29.
- Plaintiffs re-sent the same package of information in September of 2016. Dkt. #1 at ¶ 16.
- Plaintiff George Schilling sent Defendant a written dispute in February of 2016 to challenge Defendant's reporting of the debt as "charged off" rather than paid off by a compromised amount. *Id.* at ¶ ¶ 17 and 18. He specified that Defendant's reporting of the mortgage loan being charged off is inaccurate because the account was settled for less than the full amount. *Id.* He also asked Defendant to "reinvestigate this matter and correct the disputed item as soon as possible." *Id.* Schilling also sent this letter to Trans Union, Experian and Equifax, *id.*, the three entities Plaintiffs' Complaint alleges are "credit reporting agencies" within the meaning of FCRA, 15 U.S.C. 1681a(f). *Id.* at ¶ ¶ 3, 4 and 5.
- Plaintiff Shu Schilling separately sent her written dispute to Defendant in February of 2016 containing the same request for reinvestigation and correction of the reported item as George Schilling's written dispute. *Id.* at ¶ 19. She too sent a letter to the three credit reporting agencies. *Id.*

Equifax, *id.*, the three entities Plaintiffs' Complaint alleges are "credit reporting agencies" within the meaning of FCRA. *Id.* at ¶ 3, 4 and 5.

### III.    DISCUSSION

#### A.  Legal Standard

Rule 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The Rule requires the Court to assume the truth of the Complaint's factual allegations, credit all reasonable inferences arising from those allegations, and resolve doubts in favor of the plaintiff. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). A defendant's motion should be denied when there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief, *id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Dismissal of the complaint, or any claim within it, may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). Thus, this Court must determine whether Plaintiffs have stated a plausible legal claim, not whether they will be successful on the merits of such claim. This standard bears repeating because Defendant largely concentrates on the merits of

1   Plaintiffs' claim, rather than focusing on the 12(b)(6) standard.  This Court analyzes this motion

2   in a manner consistent with the Rule 12(b)(6) standard.

3       As a general rule, the Court may not consider any material beyond the pleadings and

4   attached exhibits.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).  Because

5   neither party has asked the Court to consider materials beyond the four corners of the Complaint

6   and Exhibits attached thereto, the Court does not depart from the general rule.

7   **B.  Plaintiff's FCRA Claim: Inaccuracy**

8       As noted above, Defendant admits it is a "furnisher" as defined by FCRA.  "Furnishers"

9   are sources that provide credit information to credit reporting agencies.  *Gorman v. Wolpoff &*

10  *Abramson, LLP,* 584 F.3d 1147, 1153 (9th Cir. 2009).  Under FCRA, "furnishers" have the duty

11  to investigate and/or correct inaccurate information, and an individual may bring a private cause

12  of action to sue a furnisher for its failure to fulfill those duties.  15 U.S.C. § 1681s–2(b); *Nelson*

13  *v. Chase Manhattan Mortg. Corp.,* 282 F.3d 1057, 1060 (9th Cir. 2002).  In order to state such a

14  claim under FCRA, Plaintiffs must, "at a minimum," allege: (1) factual content showing an

15  inaccuracy in their credit report; and (2) that they communicated their disputes to the credit

16  reporting agencies ("CRAs").  *Gorman*, 584 F.3d at 1154, 1162.

17      With respect to the "inaccuracy" element, Plaintiffs allege that Defendant reported their

18  debt to three CRAs as "charged off" rather than paid off by a compromised amount, and that this

19  reporting is inaccurate as of October 2015 when Plaintiffs satisfied the debt by tendering the short

20  pay off amount of $10,000.00.  Dkt. #1 at ¶ 17.  In other words, Plaintiffs assert that their payoff

21  constituted accord and satisfaction of their debt.  Thus, if Plaintiffs have plausibly alleged accord

and satisfaction under Washington contract law, they have also adequately pled the "inaccuracy" element of their FCRA claim.[4]

Under Washington law, the doctrine of "accord and satisfaction" recognizes a debtor and creditor's agreement to settle a claim by some performance that differs from that which is claimed due—once the creditor accepts the substituted performance, it amounts to full satisfaction of the claim. *Northwest Motors, Ltd. v. James,* 118 Wash. 2d 294, 303 (1992) (en banc). If the substitute agreement is consummated, it supersedes the original contract. *Northwest Motors*, 118 Wash. 2d 305; *Evans v. Columbia Int'l Corp.,* 3 Wash. App. 955, 957 (1970). The three essential elements for an accord and satisfaction are: (1) the existence of a bona fide dispute; (2) an agreement to settle the dispute; and (3) performance of the agreement. *Ward v. Richards & Rossano, Inc.,* 51 Wash. App. 423, 429 (1988).

### 1. Bona Fide Dispute

Defendant first argues there can be no accord and satisfaction because the amount of debt Plaintiffs owed was never in dispute. Dkt. #16 at 10.[5] Plaintiffs respond that the Defendant's offers to settle the balance of the debt for "pennies on the dollar" rendered the amount owed uncertain, unliquified, or disputed. Dkt. #23 at 9. Specifically, Plaintiffs point out that Defendant's letter – sent only weeks before Plaintiffs made their counteroffer and tendered their

---

[4] Plaintiffs assert a novel legal theory here, and Rule 12(b)(6) dismissals are especially disfavored in such cases. *See McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004) (explaining that a court should be "especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions") (internal citations omitted).

[5] Interestingly, Defendant presents two different amounts for the "undisputed" balance owed prior to Plaintiffs tendering their $10,000.00 check. *Compare* Dkt. #16 at 10 ("[T]here was no dispute they owed $180,000. . .") *with id.* at 14 ("The April 2015 statement and the September 23, 2015 [sic] indicate that the unpaid principal balance was $190,950.89."). Thus, Defendant's own motion raises questions as to the amount actually owed.

check – explicitly offers to reduce the remaining balance on Plaintiffs' account and contains three different amounts. *See* Dkts. #1 at 3 and #1-2 at 49 ("We're offering to greatly reduce the remaining balance of $190,950.89 on your account."). For the reasons discussed herein, the Court agrees with Plaintiffs.

Where the amount owed is in dispute, acceptance of a lower amount by the creditor constitutes an accord and satisfaction. *Field Lumber Co. v. Petty,* 9 Wash. App. 378, 379 (1973). However, if the amount owed is not in dispute, then there can be no accord and satisfaction without proof of additional consideration. *Id.* at 378, 380. Likewise, "[w]hen there is a dispute between the debtor and the creditor as to the amount due, one claiming that a certain sum is due and the other claiming that another sum is the proper amount, the demand is unliquidated, within the meaning of that term as applied to accord and satisfaction." *Paulsen Estate, Inc. v. Naches—Selah Irr. Dist.,* 190 Wash. 205, 208 (1937).

Taking all factual allegations as true, the Complaint and attached Exhibits give rise to an inference that there was a bona fide dispute over the amount owed on the debt. At the time Plaintiffs made their counteroffer and then tendered their check, they had been provided three different pay off amounts, all lower than $190,950.89, the acceptance of any of which would have resolved their debt. At the least, the debt was uncertain.

Defendant argues that Plaintiffs' Complaint does not actually allege that the amount owed was uncertain. Dkt. # 24 at 6. While it is true that Plaintiffs' Complaint does not use the words "the debt was uncertain," the Complaint as written provides adequate notice to the Defendant of Plaintiffs' theory. *See* Dkt. #1 at ¶ 17 (alleging Defendant reported Plaintiffs' debt as "charged off" rather than paid off by a compromised amount even though Plaintiffs satisfied the debt by tendering the short pay off amount of $10,000.00).

Defendant further argues that even if there was a dispute, the parties disputed the amount of the settlement offer, not the amount of the outstanding balance. Dkt. #24 at 6. But Defendant is drawing a distinction without a difference. *See First Nat'l Bank v. White-Dulaney Co.*, 123 Wash. 220, 224 (1923) (internal citations omitted). The Washington Supreme Court has long held that when the parties agree on the amount of debt owed, but the debtor has an offset or claim against the creditor, the debt owed is considered disputed. *First Nat'l Bank v. White-Dulaney Co.*, 123 Wash. 220, 224 (1923). Similarly, when the parties agree on the amount of the debt owed, but there is a dispute about the debtor's right to a set-off or counter claim, the claim as a whole is rendered disputed. *Id.* The reason for this is simple: "[T]here is no material difference between a dispute directly involving the claim itself and a dispute involving an offset against the claim; that whatever may be the ground of the dispute the fact remains that there is one." *Id.*

Finally, for the first time in its reply brief, Defendant questions Plaintiffs' good faith belief that there was a dispute about *any* amount. Dkt. #24 at 6. Since "[i]t is well established that new arguments . . . presented for the first time in Reply are waived," *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006), the Court will not address this argument.

### 2. The Agreement to Settle

Defendant next argues that it did not agree that "only $10,000 was due and owing – so payment of that sum is not a full settlement." Dkt. #16 at 10. The "accord" is the agreement between debtor and creditor to settle a claim by some performance other than what is due, and "satisfaction" refers to the performance of the accord. *Dep't of Fisheries*, 25 Wash. App. at 676. Where, as here, the amount owed is alleged to be disputed or unliquidated, the agreement to settle the dispute may be implied from surrounding circumstances. *U.S. Bank Nat'l Ass'n v. Whitney*, 119 Wash. App. 339, 350 (2003). A key circumstance is the creditor's acceptance of a draft

tendered in full payment of the debt, creating the contract binding on both parties. *Dep't of Fisheries,* 25 Wash. App. at 676; *Or. Mut. Ins. Co. v. Barton,* 109 Wash. App. 405, 413 (2001).

Further, the parties need not expressly bargain to establish the accord. Rather, Washington courts have found that the parties' agreement can be shown when the debtor offers payment accompanied by conduct from which the creditor cannot fail to understand that payment is tendered on the condition its acceptance constitutes satisfaction. *U.S. Bank Nat'l Ass'n v. Whitney*, 119 Wash. App. 339, 351 (2003).[6] A plaintiff need not establish the creditor "knew the legal result of their acceptance of the check, as the mere acceptance will be regarded as assent." *First Nat'l Bank v. White-Dulaney Co.*, 123 Wash. 220, 224 (1923).

For example, in *Oregon Mutual Insurance Company v. Barton*, accord and satisfaction existed when an insured deposited a settlement check given to him by his insurance company in "full settlement" of his claim for a burned tractor, and the check was accompanied by a letter from the insurance company confirming the settlement. 109 Wash. App. at 410. In that case, Oregon Mutual Insurance Company accused its insured, George Barton, of arson, but only after it had agreed to a settlement, issued the settlement drafts along with a proof of loss statement, and after

---

[6] As the Washington Supreme Court has written, Washington adheres to the objective manifestation theory of contracts when it comes to ascertaining the mutual intentions of contracting parties:

> "This theory imputes an intention to a person which corresponds to the reasonable meaning of that person's words and acts . . . Petitioner's unexpressed impressions are meaningless when attempting to ascertain the mutual intentions of the parties. When Petitioner James tendered the $3,596.42 check to Respondent Northwest, he did not protest the repair costs nor the amount stated on the invoice. He did not express his intent to negotiate on the costs at a later time. His internalized subjective intent to object does not meet the objective manifestation test this court adopted in *Dwelley.*"

*Nw. Motors, Ltd. v. James*, 118 Wash. 2d 294, 302–03, (1992) (internal citations omitted).

Mr. Barton had negotiated the drafts. *Id.* at 409. It then sued to void the settlement agreement with Mr. Barton. *Id.* at 409. The Court found that the insurance company and Barton had reached an accord and satisfaction, and because an accord cuts off all defenses and arguments based on the underlying contract, Oregon Mutual could not void the settlement agreement. *Id*. at 419.

In contrast, Washington courts have found no accord and satisfaction where the notation "full and final payment" was a pro forma notation made on every business check in typeface too small to be read easily, *see Kibler v. Frank L. Garrett & Sons, Inc.*, 73 Wash. 2d 523, 528 (1968)), or where testimony from both the debtor and the creditor showed the payment was accepted on specific disavowal that an accord was being created. *See U.S. Bank*, 119 Wash. App at 344, 351.

As was the case in *Oregon Mutual*, Plaintiffs in this case have alleged a letter accompanied their settlement check. *See* Dkt. #1 at 3. Specifically, the letter specifies the payment is "in consideration for Chase releasing the note and re-conveyance of the Deed of Trust associated with the Loan's account number XXXXX." Dkt. #1-2 at 18. Unlike the parties in *Kibler*, Plaintiffs here signaled their intent to offer $10,000.00 to settle the debt a week prior to tendering their check and accompanying confirmation letter. Dkts. #1 at 3 and #1-2 at 18 and 49. Unlike the parties in *U.S. Bank*, Plaintiffs here were *responding* to an offer initiated by Defendant and explicitly called their payment to Defendant's attention. Therefore, Plaintiffs' Complaint and attached Exhibits detail conduct akin to that in which Washington courts have found accord and satisfaction, and the Court finds that Plaintiffs have adequately pled an agreement to settle.

### 3. Performance: Satisfaction

Defendant does not address the "satisfaction" element of accord and satisfaction. Thus, the Court finds that Plaintiffs have adequately alleged the element. A creditor can accept payment and avoid formation of an accord only where both parties understand before payment is accepted that the payment will not settle the claim. *U.S. Bank,* 119 Wash. App. at 344, 351 (finding no

accord and satisfaction where testimony from *both* parties showed the creditor "accepted the check on the clear understanding that no accord had been reached" and that tender "was not conditioned on" acceptance of the debtor's accounting). Here, Plaintiffs allege: (1) they actually tendered payment, as evidenced by the image of the check in Dkt. #1-2 at 20; (2) they tendered payment on the understanding that an agreement had been reached, as evidenced by Dkt. #1-2 at 18; and (3) Defendant accepted the payment unconditionally and cashed the check immediately. *See* Dkts. #1 at ¶ 12 and #1-2 at 18. Therefore, Plaintiffs have sufficiently alleged the third element of accord and satisfaction under Washington law.

For all of these reasons, Plaintiffs have sufficiently alleged all elements of "accord and satisfaction," and therefore have also adequately pled the "inaccuracy" element of their FCRA claim.

### 4. *Statute of Frauds*

Finally, Defendant argues that because an accord and satisfaction would alter pre-existing loan documents, it would violate the Credit Agreement Statute of Frauds, RCW 19.36.110, and therefore Plaintiffs' FCRA claim fails as a matter of law. Dkt. #16 at 11 ("The Schillings' counteroffer is thus not a modification of their obligation."). For this argument to succeed, Defendant would need to demonstrate that (1) the Credit Agreement Statute of Frauds is applicable; and (2) enforcing the Statute of Frauds precludes Plaintiffs' claim. Defendant fails to meet this burden for several reasons.

First, the language of the statute[7] renders it "inapplicable, since no one is seeking to enforce the credit agreement 'against the creditor.'" *See Robinett v. Opus Bank*, 987 F. Supp. 2d

---

[7] "A credit agreement is not enforceable against the creditor unless the agreement is in writing and signed by the creditor." RCW 19.36.110.

1099, 1102 (W.D. Wash. 2013).  Rather, Plaintiffs' FCRA claim focuses on a *furnisher's* liability

for investigating inaccuracies in a consumer's report, a claim that requires a showing of an

"inaccuracy."  Plaintiffs have not sought to enforce the accord and satisfaction they allege exists,

they simply use it as a basis for their theory of FCRA liability.

Second, Plaintiffs argue that the Statute of Frauds does not apply because the case does

not involve a modification of the terms of the loan or the Defendant extending credit, rather, it

involves Defendant's attempt to "clear its book of a debt that might not be repaid at all."  Dkt.

#23 at 12.  Defendant responds that this is indistinguishable from modifying the terms of the loan,

but provides no legal authority to support that assertion.[8]  Dkt. #24 at 8.

Defendant also appears to assert that any agreement to accept Plaintiffs' counteroffer must

have been in writing and signed by both parties to be enforceable.  Dkt. #24 at 8.  As an initial

matter, Defendant's offer, Plaintiffs' counteroffer and the letter accompanying the tendered check

*were all* in writing.  Dkts. #1 at 3 and #1-2 at 18 and 49.  More importantly, the cases upon which

Defendant relies are factually distinguishable from the instant case.

Defendant first relies on *Patrick v. Wells Fargo Bank, N.A.*, 196 Wash. App. 398 (2016),

which centered on a creditor's *oral* statements to a debtor, promising to increase the debtor's loan

amounts and not to call in his loan.  *Id.* at 252.  Defendant cites to a footnote that simply reiterates

that loan modification agreements must be in writing under the Credit Agreement Statute of

---

[8] In fact, in other cases, courts have construed the Statute of Frauds narrowly.  In *Robinett v. Opus Bank,* 987 F. Supp. 2d 1099, 1104 (W.D. Wash. 2013), for example, the Court declined to apply the credit agreement statute of frauds to the borrower's claims that the bank had misrepresented that their lending relationship would continue, concealing the fact that the bank had no intention of remaining in the real estate development loan business.  *Id.* The Court explained that the bank's offers were "not contractual promises (or 'oral agreements to loans money, extend credit, [or] forbear from enforcing repayment'), but instead [we]re representations (upon which Plaintiffs allegedly relied) that a business relationship will continue."  *Id.*

Frauds.  The case does not stand for the proposition that the counteroffer must be signed by both parties.

Defendant also points to *Union Bank, N.A. v. Blanchard*, 194 Wash. App. 340, 355 (2016), which involved guarantors asserting that a lender made promises to extend them a loan as allegedly evidenced by "risk assessment reports" (some of which acknowledged the possibility that borrower will need additional credit in order to stay current on loan payments) and a "loan memorandum."  *Id.*  The Court found that the guarantors' reliance on those documents as proof of purported promises was barred by the statute of frauds, reasoning that the documents the guarantors relied on had not been signed one of the lender's representatives and *did not actually contain promises.  Id*.  In this case, (1) the Defendant's initial offer was sent by a specific representative of Defendant; (2) Plaintiffs' counteroffer and the letter accompanying the tendered check are signed by Plaintiffs' counsel; (3) Plaintiffs' check, with the words "Paid in Full" written on it, was endorsed and deposited by Defendant.   Taken as a whole, these documents contain the signatures of both parties.  Thus, at this stage of the proceedings, Defendant has not demonstrated that enforcing the Credit Agreement Statute of Frauds precludes Plaintiffs' claims as a matter of law.

### C.  Plaintiff's FCRA Claim: Notice of Dispute to Defendants

Defendant also argues that Plaintiffs' FCRA claim should be dismissed because "they do not allege the credit reporting agencies contacted Chase" regarding Plaintiffs' dispute.  Dkt. #16 at 12.  The Court is not persuaded by Defendant's argument.

Section 1681s–2(b) of FCRA imposes several duties on "furnishers," like Defendant, which provide credit information to credit reporting agencies.   *Gorman,* 584 F.3d at 1153. Specifically, a furnisher shall:

(A) conduct an investigation with respect to the disputed information;
(B) review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) ...;
(C) report the results of the investigation to the [CRA];
(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information ...; and
(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) ... (i) modify ... (ii) delete ... [or] (iii) permanently block the reporting of that item of information [to the CRAs].

An individual may bring a private cause of action for a furnisher's failure to fulfill these duties. *Nelson,* 282 F.3d at 1060.  However, a furnisher's duties to investigate and correct inaccurate information are triggered only upon notice of dispute. *Gorman,* 584 F.3d at 1154.  ("[N]otice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b).").  So it is only after (1) a consumer notified a credit reporting agency of an inaccuracy, (2) the agency has notified the furnisher, and (3) the furnisher has failed to take action, that a consumer may sue the furnisher.  *Id.* [9]

Stating a claim under FCRA requires a plaintiff to allege the furnisher's duties were triggered, and the furnisher's duties are triggered upon notice from the CRAs of the consumer's dispute. *Gorman*, 584 F.3d at 1154, 1162.  In an unpublished decision, the Ninth Circuit reiterated that a plaintiff must, "at a minimum, [] allege factual content showing . . . that he communicated his disputes to the credit reporting agencies ("CRAs")."  *Banks v. ACS Educ.*, 638 F. App'x 587, 590 (9th Cir. 2016).  *See also McDonald v. OneWest Bank*, No. C10-1952RSL, 2012 WL 12878776, at *1 (W.D. Wash. Apr. 19, 2012) (allowing the plaintiff to amend his complaint because plaintiff had notified credit reporting agencies of his dispute and credit reporting agencies are required to provide notice of the dispute to the furnishers under 15 U.S.C. § 1681i(a)(2)(A));

---

[9] FCRA provides that a party may recover actual damages for negligent violations of the statute, 15 U.S.C. § 1681*o*, and both actual and punitive damages for willful violations of the statute, 15 U.S.C. § 1681n(a).

*Keetch v. Saxon Mortg. Servs*, No. 13-CV-0332-JLQ, 2013 WL 5945798, at *3 (E.D. Wash. Nov. 6, 2013) ("Plaintiffs' alleged receipt of correspondence from the CRAs stating the dispute had been "researched," "reinvestigated," or "verif[ied]" with "the creditor" is more than sufficient to suggest the plausibility of contact with the furnisher.").

Defendant relies on *Tuttle v. Bank of N.Y. Mellon*, a case in which this Court granted defendants' motion to dismiss (and found an amended complaint would be futile) because the plaintiff had "not alleged *any* facts to support the conclusion that Defendants received a notice of a dispute from any credit reporting agency, which could trigger Defendants' duty to investigate." No. C11-1048-RSM, 2012 WL 726969, at *3 (W.D. Wash. Mar. 6, 2012) (emphasis added). This Court explained that it would be improper to infer that defendants received such a notice "based *solely* on Plaintiff's assertion that he disputed the debt to credit reporting agencies" because "the Court cannot know whether the credit reporting agency, upon receiving Plaintiff's complaint, determined that Plaintiff had failed to provide sufficient information to investigate the disputed information, or that Plaintiff's dispute was frivolous, and terminated the reinvestigation, or whether it conducted the reinvestigation and alerted the furnishers of the dispute." *Id.* (emphasis added).

*Tuttle* is distinguishable from the instant matter. Unlike the minimal allegations made in *Tuttle,* the Complaint here alleges that Plaintiffs sent multiple written inquiries to Defendant Chase and the CRAs (Defendants Experian, Equifax, and Trans Union) during February 2016. Dkt. #1 at ¶¶ 18 and 19. The letters both requested investigation and a correction to Defendant's listing the mortgage loan as "charged off" because it had been settled for less than the full amount. *Id.* Significantly, Defendant Equifax indicated that the dispute had been researched <u>and affirmed</u> by the creditors – i.e. Defendant Chase – stating, "creditor has verified to OUR company" that

the prior payment history and current balance were being reported accurately.  *Id.* at ¶ 20.  Thus, the Court draws the reasonable inference that the CRAs notified Defendant of the dispute.

Further, requiring plaintiffs to formally allege a furnisher received a notice of dispute from a CRA – rather than simply requiring plaintiffs to allege sufficient factual content from which to make that inference – might set the bar too high.  "Indeed, this is a fact a plaintiff may not be able to plead at the time of the filing of the complaint because FCRA does not require the CRA to notify the consumer when it reports the dispute to the furnisher."  *Keetch* at *3.  Accordingly, Plaintiffs adequately pled notice from the CRAs to the creditor, Defendant Chase.

## D.  Washington Consumer Protection Act

Defendant has also moved to dismiss Plaintiffs' CPA claim on the basis that such claim is preempted by FCRA.  Alternatively, Defendant argues that even if the CPA claim is not preempted, Plaintiffs have failed to state a CPA claim.

### 1.  *Plaintiffs' CPA Claim is Not Pre-Empted*

Defendant first argues that Plaintiffs' CPA claim is preempted by FCRA.  Dkt. #16 at 13.  Plaintiffs respond that to the extent their CPA claim is not premised on their FCRA claim, it is not preempted.  Dkt. #23 at 14.  The Court agrees with Plaintiffs.

The general rule is that FCRA does not preempt any state law "except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency."  15 U.S.C. § 1681t(a).  Defendant's preemption argument arises from an exception to the general rule which provides, in relevant part, that:

> "[n]o requirement or prohibition may be imposed under the laws of any State
> (1) with respect to any subject matter regulated under-
> . . .
> (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies...."

15 U.S.C. § 1681t(b)(1).

This Court is not aware of a case in which the Ninth Circuit has directly addressed the interaction between FCRA and Washington's CPA. In *Gorman*, a case involving a California statute, the Ninth Circuit wrote that the "preemption question posed a difficult issue" and offered some instructive principles. 584 F.3d at 1165. Numerous other courts, including the Ninth Circuit (in dicta), have explained that Congress intended FCRA to preempt state statutes covering conduct regulated by FCRA regarding the duties of furnishers of credit information. *See Gorman*, 584 F.3d at 1166 ("§ 1681t(b)(1)(F) appears to preempt all state law claims based on a creditor's responsibilities under § 1681s–2"); *Dvorak v. AMC Mortg. Services, Inc.*, 2007 WL 4207220, at *5 (E.D. Wash. 2007) ("[Plaintiffs' CPA] claims are preempted by FCRA because they are based upon the same facts alleged by Plaintiffs in support of their FCRA claims.").

Here, Plaintiffs allege that Defendant has violated FCRA by failing to fulfill its duties under § 1681s–2(b)(1), such as conducting an investigation with respect to the disputed information. Dkt. #1 at ¶ 35. However, Plaintiffs' CPA claim alleges that Defendant violated the CPA by "making offers to short payoffs to consumers like the Schillings, accepting their payments in connection with the offers, but failing to account for such payments," and "retaining payments but not acknowledging them and continuing to report the account as 'charged off,'" and failing "to account for the payment . . . and closing out the Loan as paid in full." Dkt. #1 at ¶¶ 53 and 54. In short, Plaintiffs' CPA claim is based on Defendant's written offer to settle the debt for less than what it is owed, inducing a payment, but denying Plaintiffs "the benefit of a satisfaction" – not just conduct related to its re-investigation duties under FCRA. Dkt. #23 at 18. Therefore, Plaintiffs' CPA claim is not preempted.

Likewise, Plaintiffs have not alleged that their injuries were exclusively caused by the erroneous entry on their credit report. This Court held that a plaintiff cannot avoid preemption

by framing her claim as arising from the repeated harassment attempting to coerce her into signing off on a loan, rather than the erroneous reporting of a loan, when the plaintiff failed to allege separate injuries specifically caused by the threats and harassment. *Ornelas v. FId. Nat'l Title Co. of Wash.,* No. C04-2141RSM, 2005 WL 3359112, at *4 (W.D. Wash. Dec. 9, 2005), *aff'd sub nom. Ornelas v. FId. Nat'l Title Co. of Washington Inc.*, 245 F. App'x 708 (9th Cir. 2007).[10]

Here, Plaintiffs specifically allege Defendant's CPA violations caused injuries to their credit worthiness, diminution in the value of their home, and "[b]ut for Chase's failure to account for the payment made by the Schillings and closing out the Loan as paid in full, they would not have to suffer actual damages, including out-of-pocket expenses and attorney's fees." Dkt. #1 at ¶ 54. Therefore, Plaintiffs alleged injuries are not *exclusively* tied to the allegedly erroneous entry.

### 2. Substantively Fails to State a Claim

Defendant also moves to dismiss Plaintiffs' CPA claim on the ground that Plaintiffs insufficiently pled four of the five elements required for such a claim. The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. A private cause of action exists under the CPA if (1) the conduct is unfair or deceptive, (2) occurs in trade or commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986). Defendant argues Plaintiffs have not sufficiently alleged the first, third, fourth or fifth elements of the cause of action.

---

[10] On appeal in the Ninth Circuit, the Court explicitly pointed out it was not considering to what extent, if any, FCRA pre-empts the CPA because the plaintiff chose not to appeal this Court's ruling that the CPA was partially pre-empted by FCRA. *Ornelas*, 245 F. App'x 708, 709 (9th Cir. 2007).

a.  <u>Unfair or Deceptive Conduct</u>

Defendant argues it did not act deceptively because Plaintiffs' allegation that Defendant deceived them by not crediting their $10,000.00 payment is not true, [11]  and that it was not deceptive for Defendant to cash Plaintiffs' $10,000.00 check while failing to release the lien.  Dkt. #16 at 14-5.  Those arguments misconstrue Plaintiffs' claim.  Plaintiffs allege Defendant's conduct of "retaining payments but not acknowledging them and continuing to report the account as 'charged off' and otherwise collectible is deceptive." Dkt. #1 at ¶ 53.  Essentially, Plaintiffs assert that Defendant induced them to believe it was willing to accept a short pay off to settle the debt, prompting Plaintiffs to set aside a large lump sum to use as a counteroffer – which Defendant accepted – but then applied it to the principal amount instead of settling the debt.  Dkt. #23 at 19. The Court agrees with Plaintiffs.

Plaintiffs here do not allege a *per se* violation of the CPA, Dkt. #1 at ¶ 15, therefore Plaintiffs must allege the conduct is "unfair" or "deceptive" under a case-specific analysis of those terms.  *Klem v. Wash. Mut. Bank,* 176 Wash. 2d 771, 785-87 (2013).  Whether an act is unfair or deceptive is a question of law.  *McDonald v. OneWest Bank, FSB,* 929 F. Supp. 2d 1079, 1097 (W.D. Wash. 2013) (citing *Leingang v. Pierce County Med. Bureau, Inc.,* 131 Wash. 2d 133, 150 (1997)).  A deceptive act under Washington law must have "the *capacity* to deceive a substantial portion of the public."  *Hangman Ridge,* 105 Wash. 2d at 785 (emphasis added).  Even accurate information may be deceptive "if there is a representation, omission or practice that is likely to mislead." *Panag v. Farmers Ins. Co. of Wash.,* 166 Wash. 2d 27, 50 (2009) (quoting *Sw. Sunsites, Inc. v. Fed. Trade Comm'n,* 785 F.2d 1431, 1435 (9th Cir.1986)).  Misrepresentation of the

---

[11] Defendants argue the $10,000.00 payment was "accounted for." Dkts. # 16 at 14 and #1-2 at 23 and 49.

material terms of a transaction or the failure to disclose material terms violates the CPA.  *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.,* 87 Wash. 2d, 298, 305–09 (1976).

Plaintiffs have plausibly alleged the existence of a settlement contract that extinguished their debt. Taking Plaintiffs factual allegations as true, and making all reasonable inferences in their favor, Defendant's alleged practice of inducing payments under the guise of settling a debt but applying it to the principal amount, continuing debt collection efforts, and reporting the debt as "charged off" is deceptive.  Where, as here, consumers make a payment in response to an offer to settle the debt, it is reasonable for the consumer to assume the payment will be attributed to satisfy the debt (per the offer).  Applying a payment to the balance of the original debt and failing to provide any notification to consumers that such accounting will occur – especially when consumers are responding to a creditor's offer to settle the debt – could constitute a failure to disclose material terms of the transaction, and may therefore, be a deceptive practice.[12]

Alternatively, the Court agrees that Plaintiffs have sufficiently alleged Defendant's conduct was unfair.  Defendant argues Plaintiffs have not alleged a *per se* unfair trade practice, nor shown Defendant's actions affect anyone other than themselves, and Defendant contends it is "not unfair to take a required payment that is less than the amount due, and less than the amount offered to settle the loan and not release the obligation."  Dkt. #16 at 15.  Plaintiffs alleges that Defendant's conduct of making offers of short payoffs to consumers like Plaintiffs, accepting their payments in conjunction with such offers, but failing to report these payments is unfair.  Dkt.

---

[12] Defendant offers no legal authority in support of its position that "Chase has no obligation to notify [Plaintiffs] of anything when they make any payment on their loan." *See* Dkt. #24 at 7. Defendant also argues that "[e]very consumer understands that payments on the loan are applied to the loan balance." Dkt. #24 at 10.  Defendants have mischaracterized the instant matter.  Here, the Defendant initiated offers to settle the debt Plaintiffs owed for pennies on the dollar, prompting the first payment Plaintiffs had made since 2010.  Dkt. #1 at ¶¶ 11, 12 and 20.

#1 at ¶ 52. Essentially, Plaintiffs argue that Defendant acted unfairly by retaining a significant sum of money Plaintiffs' believed would settle their debt, Defendants knew Plaintiffs believed it would settle their debt, and it was Defendant's actions that created Plaintiffs' good faith reliance that the check would settle their debt. Dkt. #23 at 19.

The Washington Supreme Court has suggested a defendant's act or practice might be "unfair" if it "offends public policy as established 'by statutes [or] the common law,' or is 'unethical, oppressive, or unscrupulous,' among other things." *Klem,* 176 Wash. 2d at 786 (alteration in original) (quoting *Magney v. Lincoln Mut. Sav. Bank,* 34 Wash. App. 45, 57 (1983)). The "universe of 'unfair' business practices is broader than, and encompasses, the universe of 'deceptive' business practices." *Kazman v. Land Title Co.*, No. C11-1210 RSM, 2012 WL 4336727, at *4 (W.D. Wash. Sept. 21, 2012) (quoting *Panag,* 166 Wash. 2d at 51). Therefore, while a deceptive practice is necessarily unfair, an unfair act is not necessarily deceptive. *Id*. When an act causes substantial injury that is "not outweighed by countervailing benefits to consumers or competitors, and not reasonably avoidable by the consumer," it is unfair. *Id.*

Accordingly, Plaintiffs have adequately pled that Defendant's alleged conduct was unfair.

### b. Affecting the Public Interest

Defendant next argues that Plaintiffs have not alleged facts "showing that the alleged factual situation commonly occurs." Dkt. #16 at 16. Defendants further argue that "[i]f allowed to state a claim, [Plaintiffs'] actions (not Chase's) will hurt consumers as lenders will have no incentive to make settlement offers on past-due loans." Dkt. #24 at 10. Plaintiffs respond by pointing to their Complaint, which alleges that "Chase regularly engages in the practice of making offers to settle second mortgages and inducing payments from consumers but not taking care to report the payments to the CRAs" meaning "[t]here have been other cases or will be other cases

in which the consumer is harmed in the same or similar fashion as the [plaintiffs]," Dkts. #1 at ¶ 53 and #23 at 20.

To establish the public interest element, there must be a real and substantial potential for repetition, "as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated." *Michael v. Mosquera-Lacy*, 165 Wash. 2d 595, 604-05 (2009) (quoting *Eastlake Constr. Co., Inc. v. Hess*, 102 Wash. 2d 30, 52 (1984)); *see also* RCW 19.86.093. Plaintiffs' factual allegations are accepted as true in the context of a motion to dismiss. Therefore, they have sufficiently pled the public interest element of their CPA claim.

### c. Injury and Causation

Defendant – for the first time in their reply brief – argues that Plaintiffs "have lost nothing – they merely made a payment they were already obligated to make." Dkt. #24 at 11. Since "[i]t is well established that new arguments . . . presented for the first time in Reply are waived," *Docusign, Inc.*, 468 F. Supp. 2d at 1307, the Court could disregard this argument.

That said, Defendant misconstrues Plaintiffs' allegations. Plaintiffs alleged Defendant's actions caused injuries to their credit worthiness, diminution in the value of their home, *and* "[b]ut for Chase's failure to account for the payment made by the Schillings and closing out the Loan as paid in full, they would not have to suffer actual damages, including out-of-pocket expenses and attorney's fees." Dkt. #1 at ¶ 54.

Furthermore, Plaintiffs' allegations give rise to the inference that Defendant's allegedly deceptive and unfair acts forced them to expend time and money attempting to determine how the payments applied to the loan. Dkt. #1 at ¶ 54. Plaintiffs sent written requests for information four times – Defendant responded to none. It is true the costs of instituting a CPA action to challenge Defendant's conduct do not, in and of themselves, constitute cognizable injury. *Demopolis v.*

*Galvin,* 57 Wash. App. 47, 54 (1990). But investigation expenses and other costs associated with dispelling the uncertainty created by Defendant's deceptive conduct sufficiently establishes injury under the CPA. *Panag,* 166 Wash. 2d at 62–63; *McDonald v. OneWest Bank, FSB*, 929 F. Supp. 2d 1079, 1098 (W.D. Wash. 2013). *Lucero v. Cenlar, FSB*, No. C13-0602RSL, 2014 WL 12026660, at \*4 (W.D. Wash. Oct. 3, 2014) ("[I]t is also likely that plaintiff expended time and resources attempting to unwind the misrepresentations and that such costs recoverable.").

As to whether Plaintiffs alleged that their injury was caused by Defendant's deceptive or unfair conduct, they have adequately pled that Defendant's conduct caused them harm, as discussed above. *Indoor/Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.,* 162 Wash. 2d 59, 84 (2007). For all of these reasons, the Court declines to dismiss Plaintiffs' CPA claim.

## IV.    CONCLUSION

Having reviewed the relevant pleadings and exhibits attached thereto, the Court hereby finds and ORDERS that Defendants' Motion to Dismiss (Dkt. #16) is DENIED for the reasons discussed herein.

DATED this 25th day of April, 2017.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER DENYING DEFENDANT'S MOTION TO DISMISS - 24